**Cathy TYLER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, et al. Defendants.**

**Civ. No. 86–0262–P.**

United States District Court, D. Maine.

Nov. 6, 1990.

Kathleen C. Caldwell, Hugh Calkins, Pine Tree Legal Assistance, Inc., Bangor, Me., for plaintiff and intervenor Norris.

Brian G. Kennedy, Dept. of Justice, Washington, D.C., David R. Collins, Asst. U.S. Atty., Portland, Me., for U.S. Dept. of Labor, Brock, Semler.

Peter J. Brann, Asst. Atty. Gen., Thomas D. Warren, Asst. Atty. Gen., Augusta, Me., for John Fitzsimmons and Leonard R. Nelson.

## OPINION AND ORDER

GENE CARTER, Chief Judge.

### I. *Facts and Procedural History*

This suit involves a challenge to the Department of Labor's regulations interpreting Title II, Section 231 of the Trade Act of 1974, as amended in 1981 by P.L. 97–35, 19 U.S.C. § 2291 (1982). This lawsuit was filed originally by officers of the Maine Department of Labor and Bureau of Employment Security (MDOL). The current Plaintiff, Cathy Tyler, intervened with other individuals and filed a separate complaint against the United States Department of Labor Defendants (DOL). Upon motion, the Court realigned the parties, making Tyler Plaintiff and the State Department of Labor and its officials Defendants along with the DOL. The Maine

Department of Labor is also now a Cross-claimant against the Cross-claim Defendant DOL.

The Trade Act of 1974 established a program of trade readjustment allowances (TRA), weekly support payments designed to assist workers who lost their jobs in industries affected by foreign imports. Under the statute, a worker could receive TRA benefits if the Secretary of Labor certified that the worker's company had been adversely affected by foreign competition and if the worker also met certain eligibility requirements. 19 U.S.C. §§ 2271, 2291. Eligibility for TRA benefits between 1974 and 1981 was based upon the worker's "last total or partial separation" before the application for benefits was filed. 19 U.S.C. § 2291 (1980). Regulations implementing this statutory requirement and calculating a worker's eligibility on the basis of his or her last separation were promulgated in 1975 and remained in effect until January 1987. 29 C.F.R. § 91.1 *et seq.*

In 1981 Congress amended the Trade Act's eligibility requirements, deleting the requirement that the worker's eligibility be based on the "last total or partial separation." The new statutory language based eligibility simply on "total or partial separation," 19 U.S.C. § 2291 (1986), and added an additional eligibility requirement that the worker have "exhausted all rights to any unemployment insurance to which he was entitled (or would be entitled if he applied therefor)." 19 U.S.C. § 2291(a)(3)(A) and (B). Despite these Trade Act amendments, the Secretary did not amend the implementing regulations. Rather, beginning in October 1981, the DOL issued a series of interpretative letters directing the states, which administer the TRA benefits, to calculate a worker's eligibility based upon the individual's first separation before application for TRA benefits. New regulations requiring the use of first separation were proposed but not promulgated. The statute's new exhaustion requirement first was explained in in-terpretative letters and then implemented in the same terms in regulations.

The Trade Act provides that the states, by agency agreement, shall act as agents of the DOL to administer the TRA program. The Act and its implementing regulations mandate that Maine make the individual eligibility determinations for TRA benefits using the same procedures that it uses for claims for state unemployment compensation. 19 U.S.C. §§ 2294, 2319(10). Thus, claims for TRA benefits are processed under 26 M.R.S.A. § 1194. State law provides for an initial eligibility determination by a deputy of the Bureau of Employment Security, a division of the MDOL. 26 M.R.S.A. § 1194(2). The claimant may appeal an adverse decision to the Division of Administrative Hearings. 26 M.R.S.A. § 1194(3). Appeal may be had from that decision to the Maine Unemployment Insurance Commission, 26 M.R.S.A. § 1194(5), and appeal from that body's determination may be had first to the Maine Superior Court, 26 M.R.S.A. § 1194(8), and then to the Law Court. 5 M.R.S.A. § 11001 *et seq.*

Plaintiff was a shoe worker employed by a company certified by the DOL as being adversely affected by foreign competition.[1] She was first laid off in November 1984, for two weeks, and in February 1985 she was laid off again for eight weeks. On April 10, 1985, she applied for benefits. On May 29, 1985, the MDOL issued two decisions in response to her application. First, based on the November 1984 lay-off, her first separation, Plaintiff was determined to be eligible for Trade Adjustment Assistance (TAA), another benefit package under the Trade Act which includes retraining. The second decision stated that Plaintiff was eligible to receive TRA payments, with her period of eligibility running from December 31, 1984, to December 28, 1985. On July 3, 1985, Plaintiff was laid off finally from her job. She sought the TAA benefits for which she had been determined eligible by the MDOL, and she received

---

**1.** The DOL certified Plaintiff's employer on March 25, 1985, and determined the date on which total or partial separation of workers began or threatened to begin, the "impact date," as January 1, 1984.

approval for a retraining program in accounting at a Lewiston college. The approval notice, issued on August 8, 1985, stated that she was "entitled to Trade Readjustment Allowances while receiving training." Ex. DD. The approval form for Plaintiff's second semester request for TAA retraining benefits, issued January 9, 1986, after her previously determined eligibility period had expired, stated that she was not entitled to receive TRA benefits during retraining. *Id.* Plaintiff never received any TRA benefits.

Plaintiff did receive state unemployment insurance benefits during the first several months of her retraining, and she orally made a new application for TRA benefits when the unemployment benefits were exhausted in July 1986. The MDOL treated this request as an application for Additional TRA benefits and on July 29, 1986, established an eligibility period for Additional TRA benefits of January 5, 1986 to July 6, 1986. Additional TRA benefits are weekly cash benefits that a qualified adversely-affected worker may receive for up to an additional 26 weeks in order to assist her in completing TAA-approved training.

Because the eligibility period coincided with Plaintiff's receipt of unemployment insurance benefits, MDOL did not pay Plaintiff any Additional TRA benefits. She appealed this determination through the state administrative process to no avail,[2] and while her appeal was pending, she filed an intervenor complaint in this case.

From 1975 to 1981 the MDOL followed the promulgated regulations for the Trade Act and determined an individual's eligibility for TRA benefits based on the date of his last separation from employment. After the 1981 amendments to the Act, Maine followed the DOL's instructions to base TRA eligibility on a worker's "first separation." In 1986, however, as a result of administrative appeals of MDOL's first separation decisions, the Maine Unemployment Insurance Commission ruled that the

1975 regulations were still valid and binding and that eligibility should still be based on a worker's last separation. The Act was, therefore, being interpreted differently by different administrative bodies in the State of Maine.

The DOL disagreed with the Unemployment Commission's decisions and again instructed the MDOL to use the first separation from employment in determining TRA eligibility. The MDOL reconsidered the issue, and in order to conform to the Maine Unemployment Insurance Commission's interpretation, on May 1, 1986, changed its policy and began again to base TRA eligibility decisions on a worker's last separation from employment. Using the last separation date, the MDOL also began to redetermine claims decided within the one-year period prior to the policy change.

By letter dated July 24, 1986, the DOL threatened to impose penalties if Maine did not follow DOL's first separation interpretation of the Act. After receiving this letter, the MDOL interrupted the redetermination process, subsequently deciding not to reinstitute it. Thus, Plaintiff's application for TRA benefits, which had initially been decided in the year before the MDOL's change of policy, would have been reconsidered using the last separation policy had the State's redeterminations been continued. In August 1986 MDOL and its officers sought a declaratory judgment in this Court to determine the proper interpretation of the TRA eligibility requirements. Plaintiff intervened in September 1986, and the parties were realigned as they now appear in September 1987.

Shortly after the MDOL filed suit, the DOL scheduled a hearing to determine if Maine had fulfilled its commitment under its 1975 agreement to administer TRA benefits and whether a statutory penalty should be imposed on State employers. On November 26, 1986, an Administrative Law Judge recommended that no penalty be im-

---

**2.** At the first level of appeal, Plaintiff received a favorable decision stating that her eligibility for benefits should have been determined based on the date of her last separation from employment, and that she should receive additional TRA benefits if otherwise eligible. Ex. to Supp. Ex.W. The agency, however, declined to award benefits since Plaintiff had failed to appeal the determination of Basic TRA eligibility. *Id.*

posed on Maine. The Secretary of Labor found that given the unrepealed and unsuperseded regulations, Maine's most recent interpretation of the Act, using last separation as the basis for eligibility determinations, was not unreasonable and Maine should not be penalized. This result was confirmed in an Order on a Motion for Clarification.

Noting that the DOL had apparently acceded to the permissibility of Maine's interpretation of the Act,[3] this Court stayed the case in order to allow Plaintiff to seek reconsideration of her claim in the appropriate state administrative agency. An MDOL officer issued a decision, holding that state principles of administrative finality precluded the reopening of Plaintiff's claim for Basic TRA. The MDOL found that Plaintiff's Basic TRA eligibility determination had become final under state law because she had adequate notice both of the basis of the Deputy's decision and of the possible effect of that decision, but she had not appealed it within 15 days as required by 26 M.R.S.A. § 1194(2). Although in some instances state law provides for redetermination of benefit amount, *id.* § 1194(10), Plaintiff's application for reconsideration was made far beyond the one year period allowed for such redeterminations. *Id.* The MDOL also decided that Plaintiff could not reopen the decision made on her application for Additional TRA benefits because that decision was based upon her unappealed Basic TRA decision. The MDOL found that the combination of the statute and the actual notice provided to Plaintiff after the decision was adequate to inform her of the necessity of appealing the initial decision in order to preserve her rights to Additional as well as Basic TRA benefits.

Plaintiff appealed the Deputy's decision to the Maine Unemployment Insurance Commission, but decision by that body was delayed because of a motion to disqualify the hearing officer. Because of the delay this Court decided to proceed to resolve the issues before it.

While the case was pending before the Commission, Maxine Taggart and Joan Norris moved to intervene in this case and for class certification. Maxine Taggart also moved to intervene in the state proceedings on behalf of herself and a similarly situated class. Supp.Ex.U. Neither the motion for intervention in the state proceedings nor the appeal there had been decided by the time the briefs in this case were filed. The motions of Taggart and Norris to intervene in this case also remain to be decided.

## II. *First or Last Separation*

■ Plaintiff argues that both the federal and state Defendants were bound by the Department of Labor regulations that remained in effect from 1975 until January 1987. Those regulations mandated that the eligibility period for TRA be calculated based on the applicant's last separation from adversely affected employment. Specifically, Plaintiff asserts that she did not receive the benefits due her because the federal Defendants were enforcing an eligibility policy based on an applicant's first separation from adversely affected employment which directly conflicted with their properly promulgated regulation. The state Defendants have argued that they only used the first separation standard because it was required by the federal Defendants. The federal defendants, in turn, argue that there remains no issue between them and Plaintiff because the Secretary has already determined that Maine did not violate its Trade Act agreement by using a worker's last separation as the basis for TRA eligibility calculations after the 1981 OBRA amendments.

■ As Plaintiff contends, an agency is bound by its own legislative regulations. *United States v. Nixon,* 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–02, 41 L.Ed.2d 1039 (1974); *see also, Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957). The Court is satisfied that the "last separation" regulation at issue here is a legislative rule requiring the agency's adherence. *See* 2 K. Davis, Administrative

---

**3.** In December 1986, soon after the Secretary issued his decision, regulations were promulgated mandating use of a worker's first separation as a basis for eligibility for TRA.

Law Treatise, § 7.21, at 98 (2d ed. 1979). The Secretary exercised delegated authority in promulgating regulations necessary to carry out the provisions of the Act, 19 U.S.C. § 2320,[4] and the legislative and regulatory framework suggests that the Secretary, at the time of their promulgation, intended the regulations to have legislative effect. *See Levesque v. Block,* 723 F.2d at 182. Moreover, from its inception the Secretary had issued detailed regulations on the Trade Act which were mandatory on the states. *See Levesque v. Block,* 723 F.2d at 183. The *Levesque* court stated, as is true here, that "it is inconceivable that [the Secretary] would have allowed the [state plan] to include a different definition." [5] *Id.*

In his administrative decision, the Secretary recognized both the legislative nature of a "first separation" regulation to implement the OBRA amendments and the necessity of formally promulgating any such regulation.[6] Ex. Z at 11. It was theoretically possible for the Secretary to amend or revoke the regulation mandating use of last separation upon passage of OBRA, but he did not do so. As long as a properly promulgated regulation remained in force, the Secretary and the States were bound by it. *See United States v. Nixon,* 418 U.S. at 696, 94 S.Ct. at 3101.

The federal Defendants argue, however, that the 1975 regulation was superseded by the statute itself. This argument is significantly weakened, however, since the Secretary himself has stated that the use of first separation is not mandated by the clear language of the statute. Ex. X at 8. In fact, the language of the statute as amended, basing eligibility for TRA benefits on a worker's "total or partial separation before his application," 19 U.S.C. § 2291(a)(1), does not explain when total or partial separation occurs. The explication is thus explicitly left to the Secretary, *id.* at § 2320, who, with a regulation in place dealing with the same portion of the statute, did not choose to amend or revoke it.

The Secretary held in his decision that "[u]ntil those final rules are published repealing or superseding the 1975 regulations, it was not unreasonable for Maine to continue to apply the 'last separation' rule for TRA eligibility." Ex. X, at 9. The Court goes a step further to hold that with the regulation extant, and no clear statutory supercession, the agency and the state were required to follow it.[7] As is evidenced by the divergent paths followed at different levels of the Maine administrative agency considering the issues, far too much uncertainty and waste of both state and federal governmental resources are generated by a system in which there are two conflicting rules and state agencies must choose between them.[8]

---

**4.** Regulations like this one can be legislative even though they restate the words of the statute. *Levesque v. Block,* 723 F.2d 175 (1st Cir. 1983); 2 K. Davis, *supra* § 7.11, at 57.

**5.** In his administrative ruling, as support for his conclusion that the first separation policy implementing the OBRA amendments was a legislative rule, requiring the section 553 notice and comment procedures, the Secretary himself noted these and other parallels between this case and *Levesque.* S.R. Ex. Z at 10–11.

**6.** In fact, the agency was able to and did just that within a month following the administrative decision. *See id.* at 13.

**7.** As long ago as 1920 the Supreme Court stated: "It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it

be not in conflict with express statutory provision." *Maryland Casualty Co. v. United States,* 251 U.S. 342, 349, 40 S.Ct. 155, 157–58, 64 L.Ed. 297 (1920).

**8.** The State Defendants' complaint, when they were the Plaintiffs in the declaratory judgment action, makes plain the dilemma. It alleges:

> [I]f the Maine Department of Labor were to comply with the USDOL's improper demand [to use an applicant's first separation when determining TRA eligibility], any employees whose applications for TRA payments were denied based on their first date of separation would be able to obtain a reversal of that determination by appealing to the Commission. This would engender needless appeals. Even worse, it would create a highly unfair and unlawful double standard—whereby one rule would be applied to applicants who do not appeal from the denial of TRA payments and another rule would be applied to those who do appeal.

### III. *Mootness*

■ The federal Defendants also argue strenuously that Plaintiff's claims are moot because the Secretary has already determined that the use of last separation for the period before 1987 was permissible. The Court does not agree. First, Plaintiff was injured by the federal government's enforcement of its first separation policy.[9] Moreover, if the Court were not to decide Plaintiff's federal claims and the State should decide to redetermine Plaintiff's claim, the State could, based on the Secretary's ruling, choose to apply the first separation standard, leaving Plaintiff without relief.

### IV. *Exhaustion of Unemployment Insurance*

Although Plaintiff also challenged the Department of Labor's definition of "exhaustion of unemployment insurance," she has pointed out that the outcome to her is the same regardless of which issue is decided in her favor. Plaintiff's Supplemental Brief on the Merits, at 3, n. 3.[10] The Court will not, therefore, address the claims based on the federal Defendants' definition of unemployment insurance.

### V. Administrative Finality and *Res Judicata*

The State Defendants argue that Plaintiff should receive no relief in this Court because her claims are barred by the doctrines of *res judicata* and administrative finality. Plaintiff responds that the Court has already ruled that these doctrines will not apply. Plaintiff misreads the Court's previous statement that it "finds no reason to explore questions of *res judicata* or finality with respect to the judgment ren-

dered on Ms. Tyler's individual claim in the state administrative forum." *Cunningham v. United States Department of Labor*, 670 F.Supp. 1062, 1065 (D.Me.1987). In so ruling, the Court relied on *International Union, U.A.W. v. Brock*, 816 F.2d 761, 768–69 (D.C.Cir.1987). That case properly construed the Trade Act, 19 U.S.C. § 2311(d), as being "quite explicit that individual TRA benefit determinations are for the state courts to decide according to the procedural requirements of state law." *Id.* at 768. Thus, the court stated: "[O]nce the Secretary has issued new guidelines and directives setting forth the correct interpretation of section 231 of the Trade Act, it will be for the state courts to determine whether and to what extent previously litigated cases may be subject to reconsideration under state law." *Id. Brock* made plain that this Court can order Defendants to take appropriate action to enforce the "last separation" interpretation of the statute, which the Court has determined was the proper one from its promulgation until the new "first separation" regulations were promulgated in 1987, and *"consistent with state law* to correct any erroneous eligibility determinations that may have occurred as a result of [their] incorrect interpretation." *Id.* at 769. In the proceedings following this one in the state administrative and judicial fora, Defendant Commissioner can present the arguments that he seeks to raise here, and Plaintiff, similarly, will be able to present all of her arguments why the doctrines of *res judicata* and administrative finality should not apply in her case.

### VI. *Due Process* [11]

■ Despite the Court's prior ruling, there is one issue bearing on questions of

---

Complaint, D.I. 1, ¶ 36.

9. Plaintiff was initially denied benefits on the basis of the Secretary's first separation policy. Moreover, she did not receive a redetermination based on last separation, although the State had decided to redetermine cases like hers, because the federal Defendants threatened the State Defendants with severe penalties if they continued to use the last separation standard.

10. In the intervenors' brief, counsel, who also represents Plaintiff, states that because the exhaustion issue gains no more for Plaintiff and

the intervenors than does the last separation issue, Plaintiff assumes it to be unlikely that the Court will reach the exhaustion issue. Brief of Intervenors Maxine Taggart and Joan Norris, at 4 n. 3.

11. Plaintiff's due process claim is based on the alleged inadequacy of the notice provided to Plaintiff concerning her eligibility for TRA benefits. The Amended Complaint also contains a count alleging that the notice provided to Plaintiff fails to meet the requirement set forth in 19 U.S.C. § 2275 that the Secretary provide full

*res judicata* and administrative finality which the Court must address now. The complaint presents a claim for denial of due process, asserting that the notice provided to Plaintiff describing her eligibility period for basic TRA and the basis for that determination was constitutionally inadequate. The federal Defendants argue that the Court has no jurisdiction to hear the due process claim because of its relationship to the issues left by the Act to the States. The Supreme Court, however, in *International Union, U.A.W. v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), explicitly stated: "[A]lthough review of individual eligibility determinations in certain benefit programs may be confined by state and federal law to state administrative and judicial processes, claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court." *Id.* at 285, 106 S.Ct. at 2530. The Court, therefore, can and will address the due process claim.[12]

■ The State Defendants argue that it is "unlikely" that Plaintiff can show that she has a property interest in the TRA benefits which is protected by the due process clause of the Constitution. The Court disagrees. The notice Plaintiff received said she was entitled to TRA benefits and set an eligibility period; thus, she was more than a mere applicant for benefits.

Since she was *prima facie* eligible, certainly Plaintiff is entitled to due process in notification concerning receipt of the benefits. *See Gray Panthers v. Schweiker*, 652 F.2d 146, 148 n. 2 (D.C.Cir.1980) (claimants' interest in receiving medical insurance benefits for which they have paid monthly premiums is property interest).

■ The notice challenged by Plaintiff is set forth as Exhibit CC. It is a printed form, mandated by the federal Defendants. The form contains the printed statements: "A. You are ENTITLED to Basic Trade Readjustment Allowances based on your: ..." and "B. You are NOT ENTITLED to Basic Trade Readjustment Allowances based on your separation of _____ for the reason[s] checked below." A box next to selection A was checked, and boxes were filled indicating that (1) the TRA was based on Plaintiff's total separation of November 28, 1984; (2) her weekly benefit amount would be $122, and her maximum benefit amount $3172; and (3) her "Eligibility Period Begins 12–31–84 and Ends 12–28–85." The bottom of the notice contained the following admonition, entitled APPEAL RIGHTS: "If you disagree with this determination, you have the right to appeal. This decision will become FINAL unless appealed by mail or in person at your local office within 15 calendar days of this date 5–29–85. This appeal period may be ex-

---

information to workers about TRA benefits, application procedures and appropriate filing dates under the Act. The merit of Plaintiff's claim is not self-evident, and Plaintiff has not presented argument on the point. The Court, therefore, deems the statutory issue raised in Plaintiff's Fourth Claim for Relief waived. *Collins v. Marina–Martinez,a* 894 F.2d 474, 481 n. 9 (1st Cir.1990).

**12.** In a memorandum Plaintiff states that she told defense counsel in a phone call that she would not continue to assert her due process claim affirmatively in light of the Court's previous order that *res judicata* would not bar her, but rather that she would hold it in reserve as a possible defense. Reply Brief in Support of Renewed Motion for Class Certification, at 3. In fact, in her extensive briefing of the issue, Plaintiff consistently argues the claim as a defense to the *res judicata* defense. Plaintiff, however, never amended the complaint to delete the

due process claim, and she never informed the Court of her decision, if it was one, not to go forward. Also, the premise on which Plaintiff may have decided not to proceed was faulty. The Court will, therefore, address the claim.

The Court also notes that in a footnote to their Response to Plaintiff's Supplemental Memorandum on the Merits, the federal Defendants, having taken the position that the Court has no jurisdiction to decide the due process issue, request the opportunity to provide their view on the merits of that issue should the Court decide to address it. The Court finds that the federal Defendants have waived the issue. They not only filed initial briefs in 1988, but were afforded the opportunity to file supplemental briefs in 1989. They knew that the Court might address the issue, yet, they did not brief it. Any apparent harshness of this ruling is undercut by the fact that the federal Defendants' agents, the State Defendants, have repeatedly and thoroughly briefed the due process issue.

tended an additional 15 calendar days for good cause."

Plaintiff and the state Defendants agree that the Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) provides the standard by which the notice in this case should be judged. Under *Mullane*, the primary requirement of due process is that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. The Court in Mullane explained:

> The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard to the practicalities and peculiarities of the case, these conditions are reasonably met, the constitutional requirements are satisfied.

*Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657. Having carefully examined the notice provided to Plaintiff, the Court finds that it is not constitutionally defective.

Plaintiff argues that the notice is inadequate because it says she is entitled to receive Basic TRA, when in fact she ultimately did not receive such benefits. The notice, however, was clear. Plaintiff was entitled to receive TRA benefits during a specific period. The notice told Plaintiff the dates of her period of eligibility and how that period of eligibility was calculated, *i.e.*, using her first separation from employment. The fact that she ultimately did not receive the benefits was due to the fact that she was either working or receiving state unemployment insurance. The notice also told her quite emphatically, however, that she would not be able to collect any TRA benefits while she was collecting unemployment, and it informed her of the necessity of appealing within 15 days. Thus, the notice was not deceptive in telling Plaintiff that she was entitled to benefits, for she was equally informed of the condition which ultimately resulted in

her not being eligible during the period established.

In essence, Plaintiff admits she did not appeal the initial TRA determination because at the time it was issued, she did not need the TRA benefits. Plaintiff's Reply Memorandum, at 13. This does not render the notice provided insufficient, however. For example, Plaintiff alleges that "it was reasonable for her to assume that she would be entitled to Basic TRA in the weekly benefit amount of $122.00 to a maximum benefit amount of $3172 following the exhaustion of her regular unemployment insurance benefits." As discussed above, however, her period of eligibility, with a fixed ending date, was explicitly stated on the notice. Similarly, when she received the notice she knew that she had been laid off in February, but that Defendants had used her brief layoff in the previous November to calculate eligibility and that half of the period of eligibility had already elapsed. Realistically, although Plaintiff did not need the benefits at the time of the decision, she should have been aware of her situation, and the notice was sufficient to prompt inquiry and appeal.

Although Plaintiff purports to complain about the form of the notice she received, it appears to the Court that she is, in fact, complaining about something else. She argues:

> It is suggested that the notice is adequate because "all citizens are presumptively charged with knowledge of the law." The law required the use of "last separation" in determining eligibility periods. Because many claimants continued to be employed after the "impact date," even after certification, the law required new eligibility determinations to be based on each subsequent separation. The claimants cannot be presumptively charged with knowledge that the state defendants would refuse to recalculate their eligibility periods and make new determinations. The notice itself only refers to the eligibility period based on the claimants' first separation. It says nothing about subsequently determined eligibility periods based on subsequent separations. The plaintiffs cannot be

**42**

presumptively charged with the knowledge that the defendants would not do what the law required.

Plaintiff's Reply Memorandum, D.I. # 48M, at 13. In effect, Plaintiff is arguing that the State Defendants were operating the TRA program in contravention of federal law because they did not make new TRA determinations each time a claimant was separated from work. While Plaintiff's arguments may ultimately suggest a separate federal claim, *see International Union, U.A.W. v. Brock*, 477 U.S. at 285, 106 S.Ct. at 2530, or a defense to the State's finality argument, which Plaintiff has presented, but which this Court has declined to address, they do not realistically point out a constitutional flaw in the notice she received.[13]

Plaintiff further argues that Defendants should have informed her that they were not following the law, or more generously, that they should have informed her of how the program operated.[14] The Court

cannot find that in a notice determining eligibility a government agency must set forth exactly how the program operates and all the details governing the dispensation of benefits. While Plaintiff was clearly entitled to full information regarding the details of the TRA program, 19 U.S.C. § 2275, she has not shown that the notice determining eligibility is the required, or even an appropriate, mechanism for providing that information. *See* note 11, *supra.* The Court finds that the notice is not the logical means for provision of such information because it postdates a large part of the process. The Court notes that Maine DOL was required to administer the TRA program in compliance with MA Handbook No. *315*, Stipulated Record, ¶ 59. That handbook mandates that applicants be given a "TRA informational leaflet" at the time of their first visit to the local office. Ex. HH, at C–1–2. These record facts cut against Plaintiff's argument that it was the function of the notice to inform her of the workings of the program. As discussed

**13.** In the administrative proceeding brought to enforce the federal first separation policy against the State's then-held practice of using the last separation, the Administrative Law Judge made findings foreshadowing the problem which might arise and about which Plaintiff now argues:

> Maine begins the period of TRA eligibility with a worker's "last" qualifying separation; last is defined by Maine as the most recent separation prior to the worker's application for individual TRA benefits. 29 C.F.R. § 91.3(20). Contrary to the apparent belief of D.O.L., and contrary to the way D.O.L. had applied the Trade Act prior to the 1981 amendments ..., Maine does not begin a new full 52 (104) week TRA eligibility period each time a worker has a subsequent qualifying separation after an interim period of re-employment. Maine does, however, permit a worker to begin a fixed TRA benefit period of 104 weeks from his most recent separation prior to the worker's first application for benefits, rather than from the first qualifying separation.

Ex. W, at 2. Thus, it appears that when Maine did use the applicant's last separation to determine eligibility for TRA benefits, it did it so differently than had been prescribed by the DOL prior to 1981. There is a significant potential question, therefore, of how Maine will construe the term last separation when it is ordered to apply it.

The issue addressed in this case, however, is the application of the first separation policy in determining Plaintiff's TRA benefits. Although

Plaintiff argues that the Department of Labor's last separation policy requires a new TRA eligibility decision after each qualifying separation, the Court has no occasion to explicate the last separation policy in this opinion, because it has yet to be applied to Plaintiff, except obliquely in the context of the state administrative bodies' refusal to allow her to appeal. Indeed, Plaintiff has only recently settled on the interpretation which she now propounds. Her counsel argues in the intervenors' reply brief that in the course of *this litigation*, Plaintiff and the State erroneously interpreted the term "last separation." Intervenors' Reply Brief, at 2 n. 1. Because the doctrine was never directly applied to her, and its significance was late to appear, and because of the complex procedural path of this case, Plaintiff, understandably, has not challenged the State's interpretation of last separation in her complaint. Rather, she has raised her arguments only as a defense to the defense of administrative finality, which the Court has said it will not address. Either the state courts or this Court will address the question of how the last separation policy operates when and if it arises.

**14.** In the same vein, Plaintiff also asserts that the notice was deceptive because it did not inform her that her period of eligibility for Additional TRA benefits was dependent on the period of eligibility for Basic TRA benefits and that failure to appeal the initial determination would preclude receipt of the Additional benefits.

above, the notice was adequate to apprise Plaintiff of the Defendants' decision on her application so that she could appeal. Lacking more factual development concerning the context of the notice, the Court cannot find it was constitutionally insufficient merely because it failed to provide motivation to Plaintiff to appeal beyond that discussed above. *See supra* at 18–19.

## VII. *Eleventh Amendment*

■ The State Defendants also argue that Plaintiff cannot obtain any relief in this Court because of the prohibitions of the Eleventh Amendment. Citing *Green v. Mansour,* 474 U.S. 64, 71, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985) and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), they suggest that declaratory judgments relating to past violations of federal law and retroactive damages awards are not available against the States. Plaintiff's amended complaint seeks a declaration that the Secretary's "first separation" policy was invalid and an injunction requiring the federal Defendant to require its agents, the State Defendants to redetermine Plaintiff's entitlement to Basic and Additional TRA weekly benefits based on their last separation from employment.

In *Edelman v. Jordan,* 415 U.S. at 663, 94 S.Ct. at 1355, the Supreme Court reaffirmed the rule that a suit by private parties seeking to impose a liability which must be paid from public funds in the State treasury is barred by the Eleventh Amendment. As Plaintiff points out, the Court of Appeals for the First Circuit has subsequently, in a context similar to the one presented here, addressed the issue of the appropriateness of ordering relief against states:

> The state defendant argues that the district court's order requiring the restoration of benefits violates the Eleventh Amendment's prohibition on the recovery of money damages from the states. Since the cost of the food stamp program is borne by the federal government, we see no Eleventh Amendment bar to ordering the restoration of benefits. The state may incur some administrative

costs, if it has to restore benefits, but these should be de minimis.

*Foggs v. Block,* 722 F.2d 933 (1st Cir.1983), *rev'd on other grounds sub nom. Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). The TRA program, like the food stamp program, is funded by the federal government. Thus, any order of the Court which might ultimately result in payment of benefits to Plaintiff does not implicate the State treasury in any significant respect. Therefore, the Eleventh Amendment does not bar Plaintiff's suit.

## VIII. *Motions for Intervention*

■ Two individuals, Doris Taggart and Joan Norris, have moved under Federal Rule of Civil Procedure 24(a) and (b) to intervene in this action. Rule 24(a) provides in part for intervention as of right

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(b) of the Federal Rules of Civil Procedure provides in pertinent part that "[u]pon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common."

The Court finds that intervention as of right is not appropriate in this case. The proposed intervenors assert in their memorandum that "[o]n the merits of their claims, both intervenors stand in exactly the same position as the Plaintiff Cathy Tyler. All three were denied benefits because their first rather than last separations were used in determining their periods of eligibility." Brief of Intervenors Maxine Taggart and Joan Norris, at 3–4. The proposed intervenors are represented by the same counsel as Plaintiff Tyler and adopt Tyler's briefs as their own. *Id.* at n. 4. The Court finds, therefore, that their

interests are adequately represented by Plaintiff Tyler.

■ Although proposed intervenor Taggart's complaint plainly shares a common issue with that of Plaintiff, the Court will exercise its discretion and also deny her motion for permissive intervention. Ms. Taggart was injured because the State Defendants used the first separation policy in determining her eligibility for TRA benefits. However, as Defendants have pointed out, Ms. Taggart stands in a different position from Plaintiff Tyler because her case squarely raises the issue of what the correct interpretation of the last separation policy is. Ms. Taggart would not benefit from either interpretation of "last separation" as Plaintiff Tyler would. Unlike Cathy Tyler, Ms. Taggart would not have intervened in the original suit by the State against the federal Defendants solely as a Plaintiff, for in order for her to receive TRA benefits she would have to have applied to her an interpretation of the last separation policy that the State apparently did not use. *See* note 13, *supra*. She, thus, would have had to challenge the State's interpretation directly, in a way Cathy Tyler did not and has not.

Because the Court had stated in its order on Defendant's motion to dismiss that it would not address issues of *res judicata* or administrative finality, the federal Defendants have not briefed the issue concerning the differences between the last separation policy as the Department of Labor had envisioned it before 1981 and as it was actually applied, at least for a time, by the State. *See* note 13. Given the fact that the State, in seeking indemnity from the federal government, has professed throughout this litigation that it only follows the dictates of the federal Defendants in administering the TRA program, the Court cannot be certain how the State will interpret the last separation policy when it is ordered to do so by this Court.

Intervention by Ms. Taggart will introduce new issues into this case, which may not have to be addressed otherwise. Moreover, full and adequate presentation of these issues, including briefing by the fed-eral Defendants, will produce delay in what has already been a long, drawn-out proceeding. The Court will, therefore, deny Ms. Taggart's motion to intervene.

■ The Court will, however, permit the intervention of Ms. Norris who was denied benefits because of the State Defendant's use of her first separation date in determining her eligibility for TRA benefits and who will receive more benefits no matter which interpretation of last separation is used. Neither opposing party objects to the intervention. The federal Defendants argue that Ms. Norris's intervention should be limited to the first/last separation and that she should not be allowed to present the exhaustion issue, which according to charts submitted would, if decided in her favor, provide her with more TRA benefits. The Court agrees, finding a dissonance in Ms. Norris's charts and her arguments. In her memorandum in support of her motion to intervene, Ms. Norris argues that she would have received benefits which she was denied "if *either* 'last separation' or [her] actual exhaustion of unemployment insurance benefits had been used in determining eligibility." Memorandum in Support of Motions to Intervene on Behalf of Maxine Taggart and Joan Norris, at 2. She also states that the exhaustion issue gains the intervenors no more than does the last separation issue. Brief of Intervenors at 4, n. 3. As noted above, Ms. Norris and Ms. Taggart both adopted Plaintiff Tyler's arguments and briefs on the merits. *Id.* n. 4. Since Plaintiff assumes and apparently acquiesces in the fact that "it is unlikely that the Court will reach the 'exhaustion' issue," *id.* n. 3, the Court finds that Intervenor Norris does not and could not continue to press her exhaustion argument now that the last separation issue has been resolved favorably to her.

## IX. *Class Certification*

■ Plaintiff's initial motion for class certification was denied on the grounds that the same relief could be obtained through an individual injunction or corresponding declaratory relief as would be obtained through class certification. *See*

Order of 23 September, 1987. The Court stated then that if it should decide the Secretary had improperly required use of the first separation policy, all members of the proposed class who had been denied benefits because of that interpretation would be entitled to seek redress from the appropriate administrative agency. *Id.* at 3. In her renewed motion for class certification, Plaintiff argues that class certification is necessary because the state and federal Defendants will seek to interpose administrative finality and administrative *res judicata* as bars to individual claims even if Plaintiff Tyler prevails on her claims. This argument has no force, however, since the Court has ruled that these issues are properly the province of the state courts. Thus, the Court's original reason for denying class certification must stand.

Moreover, development of the litigation has brought to light another reason for denying certification in this case. As the motions for intervention demonstrated, within the realm of possible class members in this case, i.e., people who were denied benefits because Defendants did not determine their eligibility for TRA benefits on the basis of their last separation from employment, there are some who may prefer not to be represented by Tyler and Norris. For example, Plaintiff Tyler and Intervenor Norris asserted that resolution of the exhaustion issue in their favor gained them no more than resolution of the first/last separation issue, and the Court, following their lead, resolved only the first/last separation issue. Some members of the proposed class, however, might be benefitted more by a favorable resolution of the exhaustion issue. Federal Rule of Civil Procedure 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Plaintiff Tyler and Intervenor Norris do not have a stake in the exhaustion issue sufficient for them to urge the Court to resolve it in addition to the first/last separation issue. The Court finds, therefore, that they are not good class representatives.

Accordingly, it is ORDERED that

(1) Joan Norris's Motion to Intervene is hereby GRANTED;

(2) Plaintiff's Renewed Motion for Class Certification is hereby DENIED;

(3) Intervenor Norris's Motion for Class Certification is hereby DENIED;

(4) Maxine Taggart's Motion to Intervene is hereby DENIED.

It is hereby DECLARED that the federal Defendants' policy for the years 1981 through 1986, requiring use of an applicant's first separation from employment for purposes of determining eligibility for TRA benefits, was INVALID.

The State Defendants are hereby ORDERED, consistent with state law, to redetermine Plaintiff Tyler's and Plaintiff–Intervenor Norris's entitlement to Basic TRA and Additional TRA weekly benefits, based on their last separation from employment prior to application.

If TRA benefits are granted to Plaintiffs as a result of such redetermination, the federal Defendants are hereby ORDERED to provide federal monies for the payment of the benefits.

SO ORDERED.