USCA1 Opinion

 

 April 16, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 92-1559 CATHY TYLER, Plaintiff, Appellant, v. JOHN FITZSIMMONS, ET AL., Defendants, Appellees. _____________________ ERRATA SHEET The opinion of this Court issued April 7, 1993, is amended as follows: Cover sheet, attorneys for appellees should read: William G. ___________ Cole, Attorney, Department of Justice, with whom Stuart M. Gerson, ____ _________________ Assistant Attorney General, William Kanter, Attorney, Department of ______________ Justice, and Richard S. Cohen, United States Attorney, were on brief _________________ for appellees. April 12, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 92-1559 CATHY TYLER, Plaintiff, Appellant, v. JOHN FITZSIMMONS, ET AL., Defendants, Appellees. __________________ ERRATA SHEET The opinion of this Court issued April 7, 1993, is amended as follows: Page 7, line 12 of text, should read: . . . March 11, 1991. Page 7, line 14 of text, should read: . . . February 6, 1991. April 7, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1559 CATHY TYLER, Plaintiff, Appellant, v. JOHN FITZSIMMONS, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, Chief U.S. District Judge] _________________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Fust ,* District Judge. ______________ ____________________ Robert Edmond Mittel with whom Mittel, Asen, Eggert & Hunter was ____________________ ______________________________ on brief for appellant. William G. Cole, Attorney, Department of Justice, with whom _________________ Stuart M. Gerson, Assistant Attorney General, William Kanter, Attor- _________________ ______________ ney, Department of Justice, and Richard S. Cohen, United States _________________ Attorney, were on brief for appellees. ____________________ April 7, 1993 April 7, 1993 ____________________ 3 *Of the District of Puerto Rico, sitting by designation. CYR, Circuit Judge. Appellant Cathy Tyler challenges a CYR, Circuit Judge. _____________ district court order dismissing her application for an award of attorney fees pursuant to the Equal Access to Justice Act ("- EAJA") for lack of jurisdiction. We vacate and remand for further proceedings on the merits of the fee application. I I BACKGROUND BACKGROUND __________ The United States Department of Labor ("USDOL") admin- isters a program under the Trade Act of 1974 (the "Trade Act"), 19 U.S.C. 2101-2495, 2291 (1993), which authorizes "trade readjustment allowance" ("TRA") benefits to eligible workers whose employment is discontinued by companies certified by the Secretary of Labor as having been adversely affected by foreign import competition. Id. 2271. In May 1985, USDOL certified ___ plaintiff Tyler's employer, Bass Shoe Company, in connection with its layoffs after January 1984. In November 1984 and again in February 1985, Tyler was laid off temporarily; her employment was terminated in July 1985. The Maine Department of Labor and Bureau of Employment Security ("MDOL") determines whether individual Maine workers are entitled to TRA benefits. In 1981, USDOL directed MDOL to utilize a worker's "first separation" date in calculating her fifty-two week eligibility period for basic TRA benefits. Although MDOL believed that the Trade Act and USDOL's regulations required use of a worker's "last separation" date, it did as directed. Under USDOL's "first separation" date formula, MDOL determined that Tyler's eligibility period for basic TRA benefits would run from December 1984 to December 1985. However, Tyler was not eligible for TRA benefits during this period because the Trade Act precludes TRA payments until a worker has exhausted her state unemployment insurance benefits. See 19 U.S.C. 2291(a)- ___ (3)(A)-(B). Tyler, who remained eligible for unemployment insurance compensation throughout the December 1984-December 1985 period, took no administrative appeal from the MDOL decision. In August 1986, MDOL brought the present action for declaratory relief against USDOL, challenging its "first separa- tion" date directive. Tyler and another claimant were permitted to intervene in the MDOL action as plaintiffs. On November 6, 1990, the district court granted declaratory relief for plain- tiffs against USDOL and MDOL.1 Tyler v. United States Dep't of _____ _______________________ Labor, 752 F. Supp. 32, 45 (D. Me. 1990) (emphasis added). _____ ____________________ 1The district court declared that: (1) "the [USDOL's] policy for the years 1981 through 1986, requiring use of an applicant's first separation from employment for purposes of determining eligibility for TRA benefits, was invalid," (2) "[t]he [MDOL is] hereby ordered, consistent with state law, to __________ ____ _____ ___ redetermine Plaintiff Tyler's . . . entitlement to Basic TRA and Additional TRA weekly benefits, based on [her] last separation from employment prior to application," and (3) "[i]f TRA benefits ____ ___ ________ are granted to Plaintiff[] as a result of such redetermination, ___ _______ __ ___________ __ _ ______ __ ____ _______________ the [USDOL is] hereby ordered to provide federal monies for the payment of the benefits." 3 Tyler had also asserted an entitlement to attorney fees under the EAJA, which permits a "prevailing party" to recover attorney fees in "any civil action" challenging a federal agency decision, 28 U.S.C. 2412(d)(1)(A), but requires that "[the prevailing] party . . , within thirty days of final judgment in _____ ________ __ the action, submit to the court an application for fees . . . ." ___ ______ Id. 2412(d)(1)(B) (emphasis added). On December 13, 1990, ___ Tyler filed a motion to extend the forty-five day filing period under Local Rule 32 of the United States District Court for the District of Maine until "thirty days after final resolution of the plaintiffs' claims for Trade Act benefits from the [MDOL]."2 The district court summarily granted the extension. On January 7, 1991, USDOL appealed and Tyler cross-appealed from the Novem- ber 6, 1990 order. The appeal and cross-appeal were dismissed by agreement of the parties on February 6, 1991. As contemplated by the district court remand order, Tyler resorted to the state administrative process for a redeter- mination of her entitlement to TRA benefits. In the meantime, on June 10, 1991, the United States Supreme Court rendered its decision in Melkonyan v. Sullivan, ___ U.S. ___, 111 S. Ct. 2157 _________ ________ (1991), which generally interpreted the EAJA filing deadline to ____________________ 2As grounds for the motion, Tyler asserted (1) "[t]he plain- tiffs have not yet finally prevailed in their claims for bene- fits," (2) "Local Rule 32 allows for such an extension for good cause shown on motion filed within 45 days after entry of judg- ment," (3) the "pending State administrative proceeding [in] which [plaintiff] is seeking redetermination of her benefits," may necessitate "considerable additional attorney time," and (4) any petition for attorney fees would be "premature," and would "necessitate multiple petitions and multiple hearings." 4 run from the entry of a "final" judgment by a court of law, not _____ __ ___ from the final decision of an administrative agency following remand. Id. at 2162. ___ Tyler settled her administrative claim with MDOL in December 1991, and promptly filed her EAJA attorney fee applica- tion with the district court. The district court denied the application as untimely, Tyler v. Fitzsimmons, 785 F. Supp. 10, _____ ___________ 12 (D. Me. 1992), holding that Melkonyan required retroactive _________ application of its jurisdictional rule to pending cases, and, therefore, that the thirty-day EAJA fee-application filing period had commenced to run on February 6, 1991, when we dismissed the appeal and cross-appeal from the district court's November 6, 1990 judgment, thereby rendering the district court judgment "final" and "unappealable." Id.; see also 28 U.S.C. 2412(d)- ___ ___ ____ (2)(G) (EAJA term "final judgment" means "a judgment that is final and not appealable") (emphasis added). As the EAJA fee- ___ ___ __________ application filing deadline is jurisdictional, and not subject to enlargement even for "good cause shown," the district court rejected Tyler's contention that her fee application was saved by the district court's earlier extension of the "procedural" deadline imposed by Local Rule 32. Tyler, 785 F. Supp. at 12. _____ II II DISCUSSION DISCUSSION __________ In Melkonyan, the Supreme Court considered the EAJA _________ filing provision in the specialized context of Social Security 5 disability benefit determinations. In reviewing decisions of the Secretary of Health and Human Services ("Secretary") denying disability benefits, the district court has only two options when ____ ___ remanding to the Secretary for further administrative proceed- ings. Melkonyan, 111 S. Ct. at 2164 (citing 42 U.S.C. 405(g)). _________ A so-called "sentence four" remand order entered by the district court constitutes a "final judgment affirming, modifying, or reversing the administrative decision," usually on substantive grounds. Id. at 2165. Melkonyan contains language suggesting ___ _________ that a "sentence four" remand order invariably results in a final __________ judgment, for purposes of determining the EAJA fee-application deadline, upon the expiration of the period for appealing the remand order affirming, modifying, or reversing the agency decision. Id. ___ On the other hand, generally speaking a so-called "sentence six" remand does not follow a district court ruling on the merits of an agency decision. Rather, upon the requisite "good cause" showing, see 42 U.S.C. 405(g) (remand for further ___ factfinding only permissible if new evidence is "material" and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"), the district court merely remands to the agency for further administrative proceed- ings in light of new evidence. Melkonyan, 111 S. Ct. at 2164. _________ Thus, in "sentence six" remands, the district court would contem- plate a retention of jurisdiction pending completion of the _________ __ ____________ remand proceedings, and there would be no "final judgment" for 6 EAJA purposes "until after the postremand proceedings are com- pleted, the Secretary returns to court, the court enters a final judgment, and the appeal period runs." Id. at 2165. ___ Appellees conceded at oral argument that Melkonyan is _________ applicable in the present case, if at all, only by analogy. Melkonyan was a Social Security case, not a Trade Act case. _________ Thus, the district court's November 6, 1990 declaratory judgment is roughly comparable, under appellees' proposed analogy, to a "sentence four" remand, in that the district court "reversed" the MDOL's denial of TRA benefits on the only substantive ground advanced by Tyler namely, the invalidity of USDOL's "first separation" directive. Accordingly, appellees contend that the EAJA filing deadline was March 11, 1991, thirty days after we dismissed the appeals from the November 1990 judgment on February 6, 1991. As it rests on a premise precluded by our case law, we reject appellees' syllogism. This is not the first time a claimant has complained to us that the retroactive fallout from Melkonyan has unfairly _________ impaired her recovery of an EAJA fee award. See Labrie v. Secre- ___ ______ ______ tary of Health & Human Servs., 976 F.2d 779 (1st Cir. 1992) (per ______________________________ curiam). In a case decided after the district court dismissed Tyler's fee application, we rejected the contention that all ___ post-Melkonyan "sentence four" remands invariably are to be _________ considered "final judgments" for purposes of the commencement of the EAJA filing period. Labrie, 976 F.2d at 786. Although the ______ Supreme Court scrutinized the district court order in Melkonyan _________ 7 to determine whether it was either a "sentence six" remand or a voluntary dismissal under Fed. R. Civ. P. 41(a), there was never any question but what the district court order in Melkonyan was _________ not a "sentence four" remand. Thus, Melkonyan's references to ___ _________ EAJA deadlines in "sentence four" cases were dicta which did not displace the Court's earlier statements in Sullivan v. Hudson, ________ ______ 490 U.S. 877 (1989). See Melkonyan, 111 S. Ct. at 2162. The ___ _________ Court in Hudson, indisputably a "sentence four" remand case, held ______ that an EAJA application could encompass attorney fees attribut- able to postremand proceedings provided the remand order did not "dictate" that the plaintiff was to receive benefits, since "'the claimant will not normally attain "prevailing party" status . . . until after the result of the administrative proceedings is known.'" Labrie, 976 F.2d at 781 (quoting Hudson, 490 U.S. at ______ ______ 886). We emphasized in Labrie that our reconciliation of the ______ Melkonyan and Hudson decisions conformed with the legitimate _________ ______ expectations of the parties in cases pending at the time Mel- ____ konyan was decided, and with the prevailing practice in this and ______ other circuits. Id. at 780 n.2 (citing Guglietti v. Secretary of ___ _________ ____________ Health & Human Servs., 900 F.2d 397, 400 (1st Cir. 1990)). _____________________ Thus, if Melkonyan does apply by analogy to the present _________ case, as appellees urge, under our jurisprudence the "sentence four" remand standard set out in Labrie, and adopted by the ______ Eighth, Ninth, and Tenth Circuits, must also apply: When a judicial remand order in Social Secur- ity disability cases contemplates additional administrative proceedings that will deter- 8 mine the merits of the claimant's application for benefits, and thus will determine whether the claimant is a prevailing party, the dis- trict court retains discretion to enter a _______ __________ final judgment for EAJA purposes after the proceedings on remand have been completed. On the other hand, if the remand order di- ___ rects the Secretary to award benefits, the _____ claimant is a prevailing party and the remand order is the final judgment for EAJA purpos- es. Labrie, 976 F.2d at 786 (emphasis added) (quoting Hafner v. ______ ______ Sullivan, 972 F.2d 249, 250-51 (8th Cir. 1992)); see also Gray v. ________ ___ ____ ____ Secretary of Health & Human Servs., 983 F.2d 954, 960 (9th Cir. ___________________________________ 1993); Gutierrez v. Sullivan, 953 F.2d 579, 584 (10th Cir. 1992). _________ ________ Most importantly, if the district court order was an open-ended remand, pre-Melkonyan practice (as defined in Labrie) would give _________ ______ rise to the presumption "that the court does intend to retain jurisdiction in such cases absent an express indication to the ______ __ _______ __________ __ ___ contrary." Labrie, 976 F.2d at 786 (emphasis added).3 ________ ______ Under the Labrie rubric, there can be no question that ______ the November 6, 1990 judgment "'contemplate[d] additional admini- strative proceedings [to] determine the merits of the claimant's application for benefits, and thus [to] determine whether the ____________________ 3Of course, the Labrie presumption would apply with even ______ greater force outside the Social Security context. When acting outside the strictures of the Social Security statute, a review- ing court normally is not confined to two types of remand, but ___ possesses the "inherent" authority to condition its remand order as it deems appropriate. See Melkonyan, 111 S. Ct. at 2165 ___ _________ (citing United States v. Jones, 336 U.S. 641, 671 (1949)). ______________ _____ Absent a Labrie-type presumption, the litigants would have no ______ reliable criteria for determining the district court's intentions where an ad hoc remand order was either silent or equivocal as to __ ___ the status of the claimant's EAJA application, or the claimant's status as a "prevailing party." 9 claimant is a prevailing party. . . .'" Id. (citation omitted). ___ The November 6, 1990 judgment did not "direct" USDOL or MDOL to award Tyler benefits, but conditionally directed defendants to _____________ award benefits in an as-yet undetermined amount only if Tyler ____ __ were found entitled to benefits under the "last separation" formula and after consideration of other applicable state law. ___ _____ _____________ __ _____ __________ _____ ___ The "first separation" rule was not the final obstacle to Tyler's claim for TRA benefits. As the district court recognized, Tyler filed no administrative appeal from MDOL's denial of basic TRA benefits in 1985, and, on remand, either USDOL or MDOL would be in a position to assert their res judicata and administrative finality defenses to bar Tyler's claim. Tyler, 752 F. Supp. at _____ 39 (citing International Union, U.A.W. v. Brock, 816 F.2d 761, ____________________________ _____ 768-69 (D.C. Cir. 1987) (noting that claimant's entitlement to reconsideration by State of her TRA benefit determination always remains subject to "procedural requirements of state law")). Thus, it was by no means a foregone conclusion that Tyler would ever receive TRA benefits, or attain the status of a "prevailing party" under the EAJA. Finally, the November 6, 1990 judgment contains no express disclaimer of jurisdiction which might conclusively rebut the Labrie presumption. ______ The district court apparently denied Tyler's EAJA fee application solely on the ground that Melkonyan had interposed an _________ insurmountable jurisdictional bar, see Howitt v. United States ___ ______ ______________ Dept. of Commerce, 897 F.2d 583, 584 (1st Cir.), cert. denied, __________________ ____ ______ 498 U.S. 895 (1990), preempting any exercise of the district 10 court's discretion to enter a "final" EAJA judgment pursuant to Tyler's postremand settlement. Given the widespread confusion prevailing among the courts at the time, see Labrie, 976 F.2d at ___ ______ 783-86, the district court's interpretation in this case was by no means without authoritative support. Nevertheless, in light of the LaBrie presumption, buttressed by the district court's ______ summary allowance of Tyler's motion for an extension of the filing deadline to "thirty days after final resolution of the plaintiffs' claims for Trade Act benefits from the [MDOL]," we find no jurisdictional bar to Tyler's EAJA fee application. The order of dismissal is vacated and the case is The order of dismissal is vacated and the case is _______________________________________________________ remanded for proceedings on the merits of the EAJA fee applica- remanded for proceedings on the merits of the EAJA fee applica- _________________________________________________________________ tion. tion. ____ 11