953 F.2d 579
 36 Soc.Sec.Rep.Ser. 129, Unempl.Ins.Rep. (CCH) P 16397A,
2 NDLR P 189
 Joey V. GUTIERREZ, Plaintiff-Appellant/Cross-Appellee,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee/Cross-Appellant.
 Nos. 90-4198, 91-4009.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 2, 1992.
Rehearing Denied April 30, 1992.
 
 1
 Maureen L. Cleary, Salt Lake City, Utah, for plaintiff-appellant/cross-appellee.
 
 
 2
 Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Dee Benson, U.S. Atty., Salt Lake City, Utah, and Deana R. Ertl-Lombardi, Sp. Atty. to the U.S. Atty. Gen., Denver, Colo. (Ronald S. Luedemann and Thomas A. Nelson, Jr., Office of the Gen. Counsel, Dept. of Health and Human Services, of counsel), for defendant-appellee/cross-appellant.
 
 
 3
 Before McKAY, Chief Judge, EBEL, Circuit Judge, and SAFFELS,* District Judge.
 
 
 4
 SAFFELS, District Judge.
 
 
 5
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 6
 Plaintiff Joey Gutierrez appeals the district court's Order of September 25, 1990, denying his request for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). Gutierrez v. Sullivan, 745 F.Supp. 665 (D.Utah 1990). Defendant Secretary of Health and Human Services cross-appeals the district court's Order of April 18, 1990, rejecting the Secretary's argument that Plaintiff's motion for attorney's fees was untimely. Gutierrez v. Sullivan, 734 F.Supp. 969 (D.Utah 1990). Because the Secretary's cross-appeal raises a jurisdictional issue, we must address it first.
 
 I.
 
 7
 Plaintiff applied for and was denied social security benefits at the administrative level. He then commenced an action in district court seeking review of the Secretary's denial of benefits. Upon review, the district court concluded that the Secretary had failed to consider evidence relating to Plaintiff's mental impairment and had either misunderstood or misapplied an evaluation made by Dr. Ghicadus, a psychiatrist. The district court remanded the case to the Secretary for further review, by Order dated January 30, 1989.
 
 
 8
 After further agency proceedings, an ALJ recommended that the Secretary award Plaintiff benefits. The Appeals Council adopted this recommendation, which became the final decision of the Secretary, on May 8, 1989. On December 12, 1989, Plaintiff filed a Motion for Entry of Final Judgment and Award of Attorney's Fees Under the Equal Access to Justice Act. The Secretary objected to Plaintiff's Motion, arguing that the final decision of the Secretary on May 8, 1989, constituted final judgment in the action, so Plaintiff's application for fees was untimely. A request for attorney's fees under the EAJA must be filed with the court "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B).
 
 
 9
 The district court rejected the Secretary's argument, and ruled that "final judgment" for purposes of the EAJA meant a final order by a court, not a final decision by an agency. Gutierrez, 734 F.Supp. at 971. The court further ruled that "[a]t present, this court is unable to enter final judgment because the Secretary has yet to file any modified findings of fact and decision with the court as required by 42 U.S.C. § 405(g)." Id. at 969. Thereafter, the Secretary filed with the court a copy of his final decision awarding Plaintiff benefits and moved for entry of final judgment. The district court entered an Order for Entry of Final Judgment on May 8, 1990, and Plaintiff renewed his motion for attorney fees under the EAJA on June 4, 1990. The district court denied the request for fees on the ground that the Secretary's position was substantially justified. Gutierrez, 745 F.Supp. at 668.
 
 
 10
 While these appeals were pending, the Supreme Court issued an opinion addressing "whether an administrative decision rendered following a remand from the District Court is a 'final judgment' within the meaning of EAJA." Melkonyan v. Sullivan, --- U.S. ----, 111 S.Ct. 2157, 2159, 115 L.Ed.2d 78 (1991). The Court rejected the same argument advanced by the Secretary here, and concluded that "a 'final judgment' for purposes of 28 U.S.C. § 2412(d)(1)(B) means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received. The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." Id. 111 S.Ct. at 2162.
 
 
 11
 The Court went on to discuss whether the district court had entered a final judgment in the case and, if not, whether either party was entitled to return to the district court for entry of a final judgment. Id. at 2162-63. The Court determined that "[t]he answer depends on what kind of remand the District Court contemplated." Id. at 2163.
 
 
 12
 Based on its rulings in Sullivan v. Finkelstein, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), the Court held that only two types of remands are available under the Social Security Act. Melkonyan, 111 S.Ct. at 2164. The first type is under the fourth sentence of 42 U.S.C. § 405(g), which provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Melkonyan, 111 S.Ct. at 2164. The second type is under the sixth sentence, which provides:
 
 
 13
 The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.
 
 
 14
 42 U.S.C. § 405(g); Melkonyan, 111 S.Ct. at 2164.
 
 
 15
 Dividing remand orders into two categories, the Court concluded, "harmonizes the remand provisions of § 405(g) with the EAJA requirement that a 'final judgment' be entered in the civil action in order to trigger the EAJA filing period." Melkonyan, 111 S.Ct. at 2165.
 
 
 16
 In sentence four cases, the filing period begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run, so that the judgment is no longer appealable. See [28 U.S.C.] § 2412(d)(2)(G). In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs.
 
 
 17
 Id. at 2165.
 
 
 18
 The district court in Melkonyan had remanded the action to the Secretary on the Secretary's motion for reconsideration in light of new evidence without deciding the merits of the pending motions for summary judgment. Id. at 2160, 2163. The district court, however, had not made a finding of good cause for the remand. Id. at 2165. Because the district court's order did not exactly meet the requirements of the sixth sentence of section 405(g), the Court was uncertain whether the district court intended to enter a sixth sentence remand or do something else, such as dismiss the case under Fed.R.Civ.P. 41(a). Melkonyan, 111 S.Ct. at 2165. The Court, therefore, vacated the decision of the appellate court and remanded the action with directions to remand the case to the district court to clarify its order. Id. at 2165, 2166.
 
 
 19
 Both parties here had an opportunity to submit briefs addressing the effect of Melkonyan on the issues presented by the Secretary's cross-appeal. The Secretary argues in his brief that Plaintiff's application for fees was untimely because the district court's remand order of January 30, 1989, was entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) and constituted a final judgment within the meaning of the EAJA. Thus, under the Secretary's theory, the time for filing an application for fees ended on April 30, 1989, at the expiration of the 60-day appeal period in Fed.R.App.P. 4(a) plus the 30-day limitations period in 28 U.S.C. § 2412(d)(1)(B). Plaintiff, on the other hand, argues that his application for fees was timely because the district court's remand was made pursuant to the sixth sentence of 42 U.S.C. § 405(g). Therefore, the district court did not enter final judgment until May 8, 1990, after the Secretary returned to the district court and filed his amended findings and decision.
 
 
 20
 We reject Plaintiff's contention that the district court's Order constituted a sixth sentence remand. The sixth sentence of section 405(g) does not contemplate a remand for the purpose of hearing additional evidence or making additional findings of fact when the district court has found that the Secretary's position is not supported by substantial evidence or that the Secretary applied the wrong legal standards. Rather, "[t]he sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Finkelstein, 110 S.Ct. at 2664.
 
 
 21
 On the other hand, we do not accept the Secretary's assertion that the district court's remand order necessarily constituted a final judgment within the meaning of the EAJA. The district court apparently intended to retain jurisdiction over the action pending the remand to the Secretary and to enter final judgment after the administrative proceedings were completed. The Supreme Court addressed such a situation in Sullivan v. Hudson, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).
 
 
 22
 In Hudson, the court of appeals directed that the district court remand the action to the Secretary for reconsideration after concluding that the Secretary failed to follow the applicable regulations. Id. at 880-81, 109 S.Ct. at 2251-52. After further administrative proceedings, the Secretary awarded the claimant benefits. The issue before the Supreme Court was whether the claimant could recover under the EAJA the attorney's fees he incurred during the administrative proceedings conducted pursuant to the remand. Id. at 879, 109 S.Ct. at 2251.
 
 
 23
 The Supreme Court ultimately concluded that a court could award fees under the EAJA for representation on remand if the Secretary's position were not substantially justified and the court concluded that the representation was necessary to carry out the court's mandate and to vindicate the claimant's rights. Id. at 890, 109 S.Ct. at 2257. Although the Court's ultimate holding in Hudson is not relevant to the issues before this court, its rationale is.
 
 
 24
 First, the Court noted that when a district court remands a case because the Secretary has made a factual or legal error in evaluating the claimant's claim, "the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." Id. at 885, 109 S.Ct. at 2254. The Court further noted: "In many remand situations, the court will retain jurisdiction over the action pending the Secretary's decision and its filing with the court. The court retains the power in such situations to assure that its prior mandate is effectuated." Id. at 886, 109 S.Ct. at 2254 (citations omitted).
 
 
 25
 Next, the Court considered "[t]wo points important to the application of the EAJA [that] emerge from the interaction of the mechanisms for judicial review of Social Security benefits determinations and the EAJA." Id. The first point was that when a remand does not dictate the receipt of benefits, the claimant usually cannot attain "prevailing party" status under the EAJA until the administrative proceedings are concluded and the Secretary has modified his earlier decision to award benefits. Id. The second point was that an application for fees under the EAJA must be filed "within thirty days of final judgment in the action," 28 U.S.C. § 2412(d)(1)(B), yet "[a]s in this case, there will often be no final judgment in a claimant's civil action for judicial review until the administrative proceedings on remand are complete." Hudson, 490 U.S. at 887, 109 S.Ct. at 2255.
 
 
 26
 Thus, for purposes of the EAJA, the Social Security claimant's status as a prevailing party and the final judgment in her "civil action ... for review of agency action" are often completely dependent on the successful completion of the remand proceedings before the Secretary. Moreover, the remanding court continues to retain jurisdiction over the action within the meaning of the EAJA and may exercise that jurisdiction to determine if its legal instructions on remand have been followed by the Secretary.
 
 
 27
 Id. at 887-88, 109 S.Ct. at 2255.
 
 
 28
 Although the Court concluded in Melkonyan that "in § 405(g) actions, remand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in sentence six," 111 S.Ct. at 2165, the Court also acknowledged the continuing validity of Hudson, which it described as a "case[ ] where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings." 111 S.Ct. at 2162.
 
 
 29
 The remand in Hudson followed a review of the Secretary's decision on the merits, and therefore could not have been a sixth sentence remand. See Melkonyan, 111 S.Ct. at 2163 (when making a sixth sentence remand a court "does not rule in any way as to the correctness of the administrative decision"). Because the only types of remand available under the statute are those under the fourth and sixth sentences of section 405(g), Melkonyan, 111 S.Ct. at 2164, the remand in Hudson must have been made under the fourth sentence of section 405(g).
 
 
 30
 Thus, we construe the Supreme Court's opinions in Hudson and Melkonyan as recognizing a subcategory of cases in which the district court makes a fourth sentence remand but intends to retain jurisdiction over the action pending further administrative proceedings and enter a final judgment after those proceedings are completed. Accord Welter v. Sullivan, 941 F.2d 674, 675 (8th Cir.1991) (holding that district court order remanding actions because Secretary committed legal and factual errors did not constitute final " 'judgment[s] ... modifying or reversing the decision[s] of the Secretary' " because district court "retained jurisdiction of the claimants' cases and planned to enter dispositive sentence four judgments after the Secretary reevaluated the claimants' applications for benefits"); see also Damato v. Sullivan, 945 F.2d 982, 987 (7th Cir.1991) (holding that remand order that "neither affirmed, modified, nor reversed the decision of the ALJ ... was not a remand under sentence four of Section 405(g) and cannot constitute a 'final judgment' pursuant to 28 U.S.C. § 2412(d)(2)(G)"); but see Luna v. United States Dep't of Health & Human Servs., 948 F.2d 169, 171-172 (5th Cir. Nov. 25, 1991) ("Although the district court purported to retain jurisdiction when it remanded, under Frizzell [v. Sullivan, 937 F.2d 254 (5th Cir.1991) ] and Finkelstein, it actually ceded that jurisdiction when it remanded. That order of remand was a 'final judgment' for purposes of the EAJA and section 405(g)....").
 
 
 31
 The district court here thought that it could not enter final judgment in the action until the Secretary filed his amended findings and decision pursuant to section 405(g). Gutierrez, 734 F.Supp. at 969, 971-72. The Supreme Court has since made clear that section 405(g) requires the Secretary to file his modified findings and decision with the district court for its review only when the court's previous remand was under sentence six. Finkelstein, 110 S.Ct. at 2664-65. Although the district court was mistaken in thinking that it could not enter final judgment when it remanded the action to the Secretary, the court made clear that it had not entered final judgment at the time of its remand order. Gutierrez, 734 F.Supp. at 972. Furthermore, after the administrative proceedings were complete and the parties returned to district court, the court entered an order captioned "Order For Entry of Final Judgment" in which it stated: "Based upon the government's Motion for Entry of Final Judgment and good cause appearing therefor, IT IS HEREBY ORDERED that final judgment is entered in the above-captioned case." Order for Entry of Final Judgment, Appellee's Supplemental App. at 9. We conclude, therefore, that the district court intended to retain jurisdiction over the action pending the remand and enter a final judgment in the action only after the administrative proceedings were finished. Because Plaintiff filed his application for attorney's fees within thirty days of the date the court entered its Order for Entry of Final Judgment, the application was timely under the EAJA.
 
 II.
 
 32
 We turn now to the merits of Plaintiff's application for fees. The EAJA requires a court to award fees and other expenses to a prevailing party in a suit against an agency of the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of proving that its position was substantially justified. Estate of Smith v. O'Halloran, 930 F.2d 1496, 1501 (10th Cir.1991). "In this circuit the test for substantial justification is essentially one of 'reasonableness in both law and fact.' " Fulton v. Heckler, 784 F.2d 348, 349 (10th Cir.1986) (quoting United States v. Community Bank & Trust Co., 768 F.2d 311, 314 (10th Cir.1985)).
 
 
 33
 "[T]he reasonableness test breaks down into three parts: the government must show 'that there is a reasonable basis ... for the facts alleged ... [;] that there exists a reasonable basis in law for the theory it propounds; and that the facts will reasonably support the legal theory advanced.' " Gatson v. Bowen, 854 F.2d 379, 380 (10th Cir.1988) (quoting United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1487 (10th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984)). We consider the reasonableness of the position the Secretary took both in the administrative proceedings and in the civil action Plaintiff commenced to obtain benefits. Fulton, 784 F.2d at 349.
 
 
 34
 We review the district court's determination that the Secretary's position was substantially justified under an abuse of discretion standard. Hadden v. Bowen, 851 F.2d 1266, 1268 (10th Cir.1988). We conclude the district court abused its discretion in not awarding Plaintiff attorney's fees.
 
 
 35
 The evidence before the ALJ established that Plaintiff could not perform his past relevant work. Therefore, the Secretary had the burden of showing that Plaintiff could perform other work in the national economy. Frey v. Bowen, 816 F.2d 508, 512 (10th Cir.1987). The vocational expert testified that Plaintiff could perform certain unskilled, sedentary assembly and simple production line jobs, though she said: "[I]f concentration is a problem and there is reason to expect or suspect this person would have off-task time, then, again, it would limit that person's ability to do these kinds of jobs.... [I]t would be my feeling because we are talking about assembly and fabrication that there would be very little room for off-task time." App. at 150.
 
 
 36
 The question confronting the ALJ was whether, given Plaintiff's mental impairments and alleged pain, Plaintiff could perform the activities required by the jobs the vocational expert identified, including following, understanding, and remembering simple job instructions, and concentrating on the task at hand. The ALJ found that Plaintiff could follow, understand, and remember simple job instructions; that he did not have significant memory disturbances; that he had the ability to make occupational adjustments; and that "[c]laimant's purported difficulty concentrating or translating written instructions into action does not appear to be supported by intelligence testing, claimant's past relevant successful work experience or successful completion of the tenth grade." Id. at 100-03. These findings were not reasonable based on the record before the ALJ.
 
 
 37
 Plaintiff was tested by a variety of mental health professionals between 1986 and 1987. Dr. Brown, who examined Plaintiff in 1986, noted that Plaintiff had concentration and attention difficulties, and that his perceptual motor functioning was impaired. Id. at 166. One of the tests Dr. Brown administered was an object assembly test. Dr. Brown observed that it took Plaintiff sixty seconds to assemble the mannequin, and "[o]nly the head was firmly in place; one arm was in a non-fitting position." Id. at 167. Dr. Morse, who examined Plaintiff three times, noted that Plaintiff was "usually confused and ha[d] trouble concentrating." Id. at 176.
 
 
 38
 The only evidence tending to support the ALJ's finding that Plaintiff could concentrate and follow directions adequately to perform the assembly jobs was contained in the report of Dr. Ghicadus, a psychiatrist who examined Plaintiff once in May of 1987. Dr. Ghicadus' report consisted of several pages of narrative, as well as a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" on which Dr. Ghicadus checked answers and made additional comments.
 
 
 39
 In the narrative portion of her report, Dr. Ghicadus diagnosed Plaintiff as having psychogenic pain disorder[1] and dysthymic disorder.[2] She stated that she found it "very difficult to separate out what impairment he has that is real, academic or what is due to his (alleged) preoccupation with his somatic problems and his pain. There is so much subjectivity to his complaints." Id. at 171.
 
 
 40
 On the medical assessment form, Dr. Ghicadus indicated that Plaintiff had a "good" ability to follow work rules, relate to coworkers, deal with the public, use judgment, deal with work stresses, function independently, and maintain attention or concentration. Id. at 173. In the comment section, however, she wrote: "The above responses are theoretical; how he would react if he were pain free and able to work. I think he is into a mode of relentless 'pain' that would preclude his working, hence his capabilities above are moot." Id.
 
 
 41
 Dr. Ghicadus also indicated that Plaintiff's ability to understand, remember and carry out complex, or detailed, or simple job instructions was "poor or none." Id. at 172. She then commented: "It is his professed response that he cannot do this. His memory responses on mental status would indicate he could or does have sufficient memory recall to handle simple job instructions." Id.
 
 
 42
 Finally, Dr. Ghicadus indicated that Plaintiff's ability to maintain his personal appearance and demonstrate reliability was "fair" and that his ability to behave in an emotionally stable manner and relate predictably in social situations was "poor or none." Id. She commented, however: "Only the patient's personal response & feeling he would react in this manner. It is difficult to extrapolate how one feels he would react if he had no preoccupying pain syndrome." Id.
 
 
 43
 The problem with Dr. Ghicadus' report is that it improperly tries to separate Plaintiff's pain from his ability to do work-related activities. Thus, while there are some statements in the report that support the ALJ's findings, the report as a whole reflects that if one takes into account Plaintiff's mental impairments, including his psychogenic pain disorder, he could not make the occupational, performance, or social adjustments necessary to do the activities required by the jobs the vocational expert identified.
 
 
 44
 Furthermore, there was no evidence that Plaintiff had the same impairments when he completed the tenth grade or performed his past relevant work. Therefore, the ALJ's reliance on his ability to do those activities as evidence of his present ability to concentrate and follow directions was unreasonable.
 
 
 45
 Because the position of the Secretary was not reasonable in fact, it was not substantially justified. The district court, therefore, erred in denying Plaintiff's request for attorney's fees under the EAJA. Plaintiff asked that the district court award him fees at the rate of $100.00 per hour rather than the statutory rate of $75.00 per hour. See 28 U.S.C. § 2412(d)(2)(A). Because the district court denied the fee request entirely, it did not consider whether an increased hourly fee would be appropriate under the statute. See id. ("[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."). In their briefs before the district court, the parties disputed whether an increase in fees was appropriate. Under the circumstances, we conclude the issue is best determined by the district court in the first instance. Accordingly, we remand the action to the district court to calculate the appropriate amount of attorney's fees.
 
 
 46
 The judgment of the United States District Court for the District of Utah is AFFIRMED in part, REVERSED in part, and the action is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 "The essential feature of [psychogenic or somataform pain disorder] is preoccupation with pain in the absence of adequate physical findings to account for the pain or its intensity." Diagnostic & Statistical Manual of Mental Disorders 264 (3d ed. rev. American Psychiatric Ass'n 1987)
 
 
 [2]
 "The essential feature of [dysthymic disorder or dysthymia] is a chronic disturbance of mood involving depressed mood ..., for most of the day more days than not, for at least two years...." Diagnostic & Statistical Manual of Mental Disorders 230 (3d ed. rev. American Psychiatric Ass'n 1987)