**Bruce C. CALVERT, Plaintiff,**

v.

**John J. CALLAHAN, PhD., Acting Commissioner of Social Security, Defendant.**

**No. 96–4215–SAC.**

United States District Court, D. Kansas.

Nov. 20, 1997.

---

· Jerome M. Saskowski, Law Office of Craig E. Collins, Topeka, KS, for Plaintiff.

Jackie A. Rapstine, Office of U.S. Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On December 5, 1996, Bruce C. Calvert commenced this action against the Commissioner of Social Security. This is not a typical social security case in that Calvert is not appealing from an adverse final decision of the Commissioner, but instead Calvert brings this action against the Commissioner for his apparent inaction in processing one aspect of Calvert's claim. A brief history of this case as gleaned from Calvert's complaint, the Commissioner's "Motion to Dismiss" (Dk.14) and other pleadings appearing in the court file is necessary to understand the posture of this case.

### Brief Chronology

Apparently in November of 1992, Calvert made inquiry with the Topeka, Kansas, office of the Social Security Administration about the possibility of applying to receive Supplementary Security Income (SSI)[1] benefits. Much to Calvert's surprise, he was informed that Social Security was already paying SSI benefits on his behalf to his sister, Joyce Handsen, as Calvert's appointed representative payee. As it turns out, an application for SSI benefits had been filed on Calvert's behalf on August 19, 1976, and that application had been approved on September 15, 1976. Handsen had been appointed Calvert's representative without his knowledge or consent. Most troubling to Calvert was his contention that he had received none of the SSI benefits paid by Social Security between September 1976 and November 1992. According to Calvert's complaint, during that time frame he received no assistance whatsoever from Handsen, nor did he reside with her. Since November 1992, SSI benefits have apparently been paid directly to Calvert.

In November 1992 Calvert demanded reimbursement for all SSI benefits paid to Handsen on his behalf. Although Social Security initially investigated Calvert's claim, through inadvertence and inattention, the matter was never finally resolved. According to the Commissioner, he "regrets that a lengthy period ensued prior to plaintiff's complaint without a determination. However, in an agency that administers to over 43 million beneficiaries, these unfortunate oversights can occur." Only after Calvert filed his complaint in this case does it appear that the Commissioner reinitiated the process of investigating Calvert's claim.

On May 8, 1997, the Commissioner filed a motion to dismiss arguing that because he has not filed a final decision, Calvert has not exhausted his administrative remedies and that this court should dismiss this case for lack of subject matter jurisdiction. *See* 42

---

1. "There are two social security disability benefit programs—Disability Insurance, for people who have qualified for social security benefits by paying social security taxes for the relevant period, and Supplemental Security Income, for people who have not. But the pertinent regulations are the same for the two programs." *Eads v. Secretary of DHHS*, 983 F.2d 815, 816 (7th Cir.1993).

U.S.C. § 405(g)–(h); *Heckler v. Ringer,* 466 U.S. 602, 617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (where claimants "have an adequate remedy in § 405(g) for challenging all aspects of the Secretary's denial of their claims....[,] § 405(g) is the only avenue for judicial review of [their] claims for benefits.") (citations omitted). Calvert responds, arguing that the exhaustion requirement should be deemed waived, citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Marshall v. Shalala,* 5 F.3d 453 (10th Cir.1993) (discussing three part test set forth in *Mathews;* exhaustion of administrative remedies excused if (1) full exhaustion would be futile; (2) claimant has suffered irreparable harm, and (3) claimant states a colorable constitutional claim that is collateral to his substantive claim of entitlement to social security benefits), *cert. denied,* 510 U.S. 1198, 114 S.Ct. 1309, 127 L.Ed.2d 660 (1994). Calvert essentially argues that he has waited long enough and that the Commissioner's oversight in processing his claim should not be permitted to go on indefinitely. In the event the court determines that it is appropriate to remand this case, Calvert asks that the court remand it as a "sentence six" remand,[2] with the court imposing strict time limitations on the Commissioner so as to expedite the decision making process.

Since the time that the Commissioner filed his motion to dismiss, "an initial determination has been made by the Social Security Administration of plaintiff's claims that plaintiff's representative payee misused plaintiff's benefits and that the Social Security Administration was at fault in selecting and monitoring plaintiff's representative payee." Commissioner's "Supplemental Notice of Initial Determination of Plaintiff's Claims at Administrative Level in Support of Defendant's Motion to Dismiss and Defendant's Motion to Stay and For Protective Order." (Dk.24). Although neither party favored the court with a copy of that decision, it appears from the pleadings filed with the court that

the Commissioner's initial decision was unfavorable to Calvert and that he is apparently in the process of exhausting his administrative remedies in challenging that adverse ruling. Despite obtaining an initial ruling (albeit unfavorable) from the Commissioner, Calvert asks this court to nevertheless retain jurisdiction so that the Commissioner will not "revert to a pattern of delay" in processing his claim.

While not unsympathetic to Calvert's claims, the court reluctantly grants the Commissioner's motion to dismiss. The court whole-heatedly agrees that the Commissioner's inattention to Calvert's claim is not to be commended. The delay between the time Calvert's claim was originally filed and the time that an initial decision was finally rendered spanned almost five years. Mercifully, Calvert has received SSI benefits since November of 1992. Nevertheless, the Commissioner's failure to process in a remotely timely manner Calvert's claim to the sums already paid to his sister on his behalf borders on the inexcusable. This is particularly true in light of Calvert's repeated efforts during the past five years to secure a final decision. Although inundated by a deluge of claims,[3] the Commissioner's admirable job of administering other persons' claims provides Calvert little solace. Whether or not Calvert ultimately prevails on his claim for SSI benefits previously disbursed, the Commissioner clearly owes this man an apology for this inordinate delay.

Notwithstanding these admonishments, the court does not believe it is appropriate to retain jurisdiction over this case. Calvert has not satisfied the three part test set forth in *Mathews.* In light of Commissioner's recent decision, the court presumes that the administrative process for evaluating Calvert's claim is now on track and that Calvert will not be forced to endure any unnecessary administrative delays. In one pleading to this court, the Commissioner indicates that his "Agency has already begun working on

---

**2.** *See Gutierrez v. Sullivan,* 953 F.2d 579, 581–82 (10th Cir.1992) (explaining the distinctions between a "sentence four" remand and a "sentence six" remand), *cert. denied,* 509 U.S. 933, 113 S.Ct. 3064, 125 L.Ed.2d 746 (1993).

**3.** According to the Social Security Administration Office of Research, Evaluation and Statistics publication titled *Fast Facts & Figures About Social Security* (1996), "[t]here were 47.4 million persons receiving a payment from Social Security in December 1995." *Id.* at 30.

providing plaintiff with an initial determination as quickly as possible." That assurance from the Commissioner has been fulfilled. The court doubts that any judicial intervention is necessary to complete the administrative process in a reasonably prompt manner. Consequently, exhaustion of administrative remedies at this juncture would not be futile. Requiring Calvert to exhaust his administrative remedies would, even at this late date, still serve the laudable purposes generally promoted by that requirement.

IT IS THEREFORE ORDERED that the Commissioner's "Motion to Dismiss" (Dk.13) is granted. Each side shall bear its own costs.